The Honorable United States Court of Appeals for the First Circuit is now in session. All persons having any business before this Honorable Court may draw near, give their attendance, and they shall be heard. God save the United States of America and this Honorable Court. The Court is in session. Will Paola Guzman please step forward and to be admitted to the Bar of this Court. For the public, Ms. Guzman is my law clerk. She's leaving in about two weeks, so the tradition of swearing my law clerk is what I do in Boston. Please raise your right hand and repeat after me. I, Paola Guzman Alejandro, do solemnly swear that I will conduct myself as an attorney and counselor for this Court, uprightly and according to the law, and that I will support the Constitution of the United States. You may be seated. You're welcome to the Bar of the Court. Okay, let's start calling today's cases. Thank you. Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 22-1350, Kevin S. Klatt v. Trooper Bruce Tobin, et al. At this time, would Mr. Johnson please introduce himself on the record to begin. Justices of the Court, my name is Robert Johnson. I represent Mr. Kevin Klatt, who is in the courtroom sitting right there. We are asking the Court to reverse the decision of the District Court, the judgment of the District Court, because of the Court's evidentiary rulings, it's our position that they had a prejudicial effect upon the jury verdict, which deprived Mr. Klatt of a fair jury trial. Let me ask you, you're not contesting the verdict itself. What you're contesting is that all the alleged errors require a new trial, correct? That's right. We take the position that the Court abused its discretion by, one, not allowing testimonial evidence of not guilty in Mr. Klatt's prior criminal case for resisting arrest. The judge in pretrial said to the attorneys, quote, I'm not going to let them have a false impression that he was guilty of something when he was acquitted, end quote. But the Court did precisely that. The Court allowed the defendants… acquittal is generally not admissible because of the difference in the burden of proof. The quantum of proof in a criminal case, of course, as you know, is different than in a civil case. So the authorities, insofar as I am aware of them, say that the evidence that you sought to admit would not be admissible in a civil case. Do you have cases that hold to the contrary? We have argued in our brief that… Because there's case law adversity or position. My impression is that case law is uncontradicted. If there is opposing case law, I would like to be aware of it. Your Honor, I think there is case law. If we look at the… Can you give me a citation? If we look at the state courts and we look at Tinsley v. the town of Framingham, which involved an issue of collateral estoppel and Heck v. Humphrey, and in Heck v. Humphrey, the Supreme Court said that they would not allow into evidence in a civil case evidence that may tend to contradict any aspect of the criminal case. The Supreme Judicial Court said in Tinsley that they would not follow Heck v. Humphrey and that they look to the notion of a collateral estoppel, that if a matter was brought up in the… decided in the criminal case, it did not preclude evidence to come up in the civil case. But that's a different issue, collateral estoppel. You're not arguing collateral estoppel. Yes, that's what I am. You… Yes, that's what I am. You are arguing… You argued before the district court that the not guilty verdict proved a fact or tended to prove a fact that was an issue in the civil case that was being tried. And you still haven't given me any case law that indicates that a criminal conviction, a criminal acquittal is admissible for that purpose. Your opponent's briefs have a number of cases where the exclusion of such evidence has been upheld. I'm struggling to find even a single case where the admission of such evidence over objection has been upheld. And you haven't given me… Heck v. Humphrey is not such a case. Tinsley is not such a case. We're talking about evidentiary rulings. If there's no authority that supports you, be frank about it and argue that there should be and that this is going to be a case of first impression. But if there is authority, I'd like to know what it is. Your Honor, we would argue that it may be a case of first impression, but we would certainly argue that my client was entitled to a fair trial. In a fair trial, when he – my client took the stand, he swore that he would give the whole truth and nothing but the truth. He was deprived of that. He tried to tell the court and the jury that he was found not guilty of resisting arrest. On the other hand, the same judge allowed the defendants to present voluminous evidence of him resisting arrest. So how could that be a full and complete and fair hearing? Our position is that it was not. He was allowed to present all the evidence he had that he was not resisting arrest. That's not the same thing as an acquittal. The defendants in this case didn't try to use the verdict in the criminal case for any evidentiary effect. It's you who are trying to use a verdict. You are allowed to present all the evidence as to what happened. That evidence either showed or did not show that Mr. Klatt was resisting arrest. That was a question for the jury. Yeah, I'd like to disagree with the reading of the record. I think the record was clear that my client was prevented from presenting evidence of not guilty at the criminal case. Yes, he was precluded from presenting evidence of the criminal verdict, but not of his conduct. Any evidence of his conduct he was allowed to present, just as he was allowed to present evidence in the criminal case. We're talking about evidentiary. You're saying that a specific piece of evidence, a verdict in a criminal case, ought to have been admissible. The district court said no. All of the authorities say no. Right? And that's not comparable to the fact that the district court admitted evidence of what actually happened so the jury could determine whether there was resisting arrest. She just didn't allow evidence that some other jury under a different standard of proof had come to a particular conclusion. Well, the court, I think, prevented my client from putting in any evidence that he was not resisting arrest. Whenever we tried to raise that, there was objection. It was sustained. What piece of evidence were you precluded from putting in other than the verdict in the criminal case? Well, he wanted to testify that he was sitting in his driveway when the police came up and pulled him out of the car and beat him and dragged him down the driveway. And that was his evidence. And it was voluminous evidence of an excessive force being applied to him. But he was allowed to testify to that. Testify to it. No, he wasn't allowed to testify to the fact of whether he was resisting arrest. He was allowed to testify to what you just said, that his version of these events is that he was sitting in his car, the police took him out, dragged him down the driveway, beat him up. He was allowed to testify to those alleged facts. That's right. All right. But he wasn't allowed to – the point is this, Your Honor, is that the court allowed the defendants to testify that he was resisting arrest, but he was not able to testify that he was found not guilty of that. The only thing that the judge precluded was that not guilty verdict. And what you're saying is that Mr. Clapp, along from all his testimony, which the jury was going to hear, wanted to also present the not guilty verdict as part of the big picture. Am I correct? Yes. Okay. And the other thing I think – Do you want to turn to your first argument regarding the amendment of the complaint? Yes. Okay. How did the trial court – what was the error the trial court made in your opinion? Mr. Clapp was pro se for three and a half years, and he was represented by counsel for a total of about four months. After counsel reviewed the case, the counsel filed a motion to amend the complaint to allege additional claims, and the court refused to allow the amendment. And I think you argue that the trial court didn't cite the right factors and perhaps didn't give enough facts for the opinion. Right. Is that your position? That there was no basis for the court denying the motion to amend. I'd like to make one final point before my time runs out, is that I think this must be considered within the context of the Seventh Amendment and the Fifth Amendment. The Seventh Amendment jury trial, he was unable to have a jury trial. He was able to present evidence of liability, but he was not allowed to present evidence of damages, and that's a violation – our view is that's a violation of the Seventh Amendment, that he had – if the jury found against him as to liability, isn't any error with respect to the presentation of damages harmless? If there's no liability, the jury would never have gotten a damage. And I follow that question with my experience as a federal district court judge. I always would tell the jury, if you are to find liability, then you move to the question of damages. And if you don't find liability, you don't go into damages. And Judge Shelley was also a district court judge. I'm sure he did the same thing for many years. Well, in this case, that was not in the instruction to the jury that they first had to find liability before they went to the damage issue. The damage issue was precluded from the beginning because of the lack of evidence coming from the medical provider. I'm looking at the verdict form, and it says if you answer yes to liability as to any of the defendants, then you go to question B, answer it, it's damages. So – and this is a very simple verdict form. It's favorable to your client. If there's liability, yes. It's not one of these forms with, like, 10 steps to find liability. It's find liability, yes or no. Okay. Any other questions, Judge Montecalvo or Judge Shelley? No, thank you. If you want to wrap it up, 30 seconds, please do. Okay, thank you, Your Honor. So I think the court must take – look at this case in the context of the Seventh Amendment and the Fifth Amendment. The Fifth Amendment requires a fair trial. That Mr. Clapp did not receive a fair trial. That he was not – he was precluded from presenting evidence about his medical condition. And the very – he was prevented from using the verdict slip, that coming into evidence. His doctor was not allowed to testify about the medical records, even though these medical records were made within course of his business. Okay. And you raised all these arguments in your brief, so. Yes. Okay. Well, thank you very much. All right.  Thank you, counsel. At this time, would Attorney Rogel please introduce himself on the record and begin? He has a three-minute argument. Thank you. Brian Rogel for Defendant Appellee Bruce Tobin. I'm going to address the issue of whether or not a guilty – a not guilty finding is ever admissible in a suit for excessive force. And I point to the Supreme Court cases to start with one assortment of 89 firearms, which says that an acquittal merely establishes that the jury had a reasonable doubt. In the Watts case, and all these are cited in the brief, the court stated it's impossible to know why the jury reached an acquittal. And in particular, the court stated that an acquittal is not a finding of fact. An acquittal might merely be just a failure to prove one element. And noting that different standard of proof, the court has held that the issue could be relitigated where there is a lower standard of proof, and that's been done in many cases. Supreme Court cases of Dowling and one lot of Emerald Stones relitigated essentially the same issues as the criminal cases because there was a preponderance of the evidence standard of proof. Also, both of those cases state that an acquittal cannot be used to collaterally stop relitigation of an issue in a subsequent matter where the standard of proof is less than a reasonable doubt. This court has applied basically the same reasoning in Fredrickson's case, and I've cited cases from the 7th, 8th, and 9th circuits precluding the admissions of acquittal. This rule is most clearly stated by the Massachusetts Court of Appeals in the Terrio case, in which the court stated there's a longstanding practice in Massachusetts that acquittals are not admitted. But this is still a federal case, so we use the federal standard. State courts can go beyond that standard. But under federal law, the law is in your favor. I cite mostly federal cases, but I think I do point to the Terrio case as a very clear statement, and I point to that because it's very settled in the Massachusetts courts. Judge Burroughs here looked and struggled a bit with this issue, and I'm asking this court to establish a clear ruling that it's not admissible so that there isn't the question and we don't come back on an appeal. Well, you're saying it's not admissible as direct evidence. If for some reason your clients had raised the matter up or for impeachment or something, there may be another way to get it in. There's always going to be the inevitable exception that we may make the mistake of allowing it in because we've opened the door, Your Honor. But I do hearken back to the Supreme Court statement that it's not a finding of fact. Therefore, I say that an acquittal is, frankly, irrelevant and inadmissible under Rule 401 because if it's not a finding of fact, it doesn't prove anything. It doesn't tend to prove or disprove anything. Let me add, in my experience also, acquittal, it's very rare, but it can happen. The jury has the power to annul. It's the annulment power. They don't get instructed, but sometimes they'll find somebody not guilty for who knows what. Again, the Supreme Court cases and discussions says we don't know what the jury decided. I mean, we never know why they decided. Perhaps you do if you go on and interview them, but the rest of us don't know. We're not supposed to. Well, whatever, but we don't know what it is. Essentially, to wrap up, I'm asking this Court to issue an opinion that acquittal is not admissible, at least in a subsequent civil case alleging excessive force. Okay. Thank you. Thank you, Counsel. Next, Counsel. At this time, would Attorney Galvez please introduce herself on the record to begin? She has a three-minute argument. Good morning, Your Honors. May it please the Court. Lorena Galvez on behalf of the defendant, FLE Brian Brooks. This appeal boils down to whether or not the district court abused the discretion. It didn't. There do not exist any extraordinary circumstances in this case that would warrant this Court to overturn the district court's various rulings. With the exception of the denial of plates and second motion to the amend, all the rulings in appeal are evidentiary rulings that were subject to a Federal Rule of Evidence 403 reviewed by the district court. And this court has long held that the trial court has wide latitude in connection with the admission and exclusion of evidence. The trial judge in this case was in the best position to make those determinations based on the facts before it. And in each instance, the district court applied adequate reasoning and acted within its discretion. Plaintiff's appeal is meriless. He cannot meet the burden required. First, the verdict slips. As we've heard, plaintiff contends they were public records and should have been admitted solely, if nothing else, for that reason. But plaintiff misses the mark. Like all evidence, they were also subject to the Rule 403 analysis. And the court found them to be highly prejudicial and likely to mislead the jury and confuse the issue outweighing any probative value that they might have. As we've already discussed, the issue before the court at that time, the jury, was whether or not Mr. Clapp had resisted arrest and not any of the issues addressed in his criminal matter. Second, the alleged sexual assault by Trooper Fanning. At the time of trial, Mr. Fanning was a non-party. All claims against Mr. Fanning had been terminated via summary judgment, and the court noted in the summary judgment decision that apart from a broad allegation that defendants and Fanning acted in concert, there was no material facts presented. Let me just ask. The summary judgment decision is not part of this appeal. That was never appealed, correct? That is correct, Your Honor. He never appealed the termination of Mr. Fanning. And that is another reason why I believe that the court considered that the sole connection that he could at most make at trial was that at some point, defendant Fanning and the four defendants may have worked at the same location at some point. And based on those facts, the 403C saw, so to speak, simply could not weigh in favor of allowing any testimony regarding the alleged sexual assault when there was no evidence presented that our clients were present or took in it or even had knowledge of it. Third and last, the testimony of Mr. Clapp's therapist and his medical notes and records with regards to the not guilty verdicts and the alleged assault by Mr. Fanning. For the reasons already discussed, the district court exercised due discretion in accordance with the Rule 403 analysis. It made no difference that those issues may have been raised during the course of treatment. Under the 403 analysis, neither the alleged assault nor the guilty verdicts were relevant to the issues before the jury. And even in the event that that was an error by the court, like we've already stated, the jury never got to damages. They found that the troopers were not guilty of excessive force, and therefore it would be a harmless error and Mr. Clapp's appeal should be denied. Let me ask you one question. The non-evidentiary ruling of not allowing the amendment to the complaint, I believe it was almost three years Mr. Clapp had been pro se. There was an attorney for almost four months. But how would you respond to that? Shouldn't he have been given an opportunity with new counsel to amend the complaint? I understand, Your Honor. That will be addressed by Attorney Donilon, but in answer to your question. Okay. I can answer your question for Attorney Donilon. Okay. Thank you. Okay. Thank you. So you know your question. Thank you, counsel. At this time, if Attorney Donilon will introduce himself on the record. He has a two-minute argument. Good morning, members of the people. Joseph Donilon on behalf of State Police Sergeant Scott Kearns. Please, the Court. I was going to address the motion to amend. So as you heard, Mr. Clapp was pro se for quite a bit of time. He had some trouble getting out of the gate. I think he initially started with 79 defendants. The judge had whittled it down, and eventually by the time of trial, we were down to four defendants. And that's why I assume with 79 defendants, it took Judge Burroughs quite a while to grant that summary judgment. Well, she did that as a preliminary matter before she let the complaint go forward. As part of her review, he was proceeding pro se at that point. And then even after her first direction to Mr. Clapp to amend the complaint, it came down with still numerous defendants. Eventually, there was just a handful, a number of state police officers and one of the clerk magistrate who issued the warrant. He was out on an immunity defense, and the case went forward until summary judgment when Trooper Fanning was out. Trooper Noe was out prior to summary judgment. Yeah, but what I'm saying is all these procedural matters and then court orders and opinions until the case goes to trial, it took a while. This is not a case that slip and fall. In three months, it's ready for trial. 2018 filing, I believe. So there was quite a bit of time that went on, quite a bit of motion practice. And counsel for Plankton did appear in June of 21. There was a conference in September before the court where we set a trial date. We set a summary judgment deadline. All of this was in September. And, again, it wasn't until November, just days before our summary judgment filings were due, that we were hit with the motion to amend. And let me ask you, normally it's a pro se, the plaintiff or defendant, the court has to give more leeway. Would you say once counsel came in, your arguments, he had, counsel had sufficient time to, or at least to inform the court, I may need to amend this, but it wasn't until the summary judgment deadline was about to elapse. And that's one of the things that the court took into account was the delay between when Mr. Johnson appeared and when he moved to amend the complaint. And that was four months, right? It was four months. Not a substantial amount of time. So why, in your view, was the trial judge right that that was? Because of what had transpired. Mr. Johnson appeared. We did have a conference with the judge. It was made very clear what's happening in September. And that's when the trial date was set. That's when the summary judgment deadline was set. And then, in addition, what he tried, what the amendments were, were facts and claims that had been known to Mr. Clapp for years. Yes, but Mr. Clapp hadn't had an attorney. But as I understand, what you're saying is Mr. Clapp's attorney was at that conference. He was. In September, right? He was. And then the amendment to the complaint, and the trial date was set. And the amendment to the complaint then came later after that. Two months after that. So what you're suggesting is counsel at least should inform the judge, I'm analyzing all this, I need to sit with my client, I might need some more time, can you give me something, but not wait those two months until you're all ready to file summary judgment motions. Absolutely. The trial date was agreed upon. We all agreed, we all worked out the dates, trial date, the summary judgment date, the trial date, the pre-trial date. It was all there on the record. Nothing in September saying, oh, by the way, I haven't read the complaint yet, I might have to amend it. That was never brought forward. So there was no indication of any prejudice to Mr. Clapp by that attorney? Nothing. Okay. Judge Selle, any questions to counsel? No, I'm content. Thank you very much. Thank you. Okay, and then Mr. Kittredge. Please introduce yourself on the record. To begin, you have a two-minute argument. Good morning, Your Honor. Attorney Joseph Kittredge on behalf of Defendant Brian Tully. And I was actually going to get up here and defer my argument because I believe everything is covered, but I'd like to make one point with regard to the amended complaint. Because in addition to the delay in getting to the amended complaint, counsel had been in the case since June and tried to submit it in November. But of also particular importance is the fact that he was only attempting to add malicious prosecution claims, assault and battery claims, and a false imprisonment claim. Now, the plaintiff was arrested on a warrant, so there would be no malicious prosecution claim. There was an excessive force claim, which subsumes assault and battery claims. And the false imprisonment, again, he was arrested on a facially valid warrant. So technically those new claims for the amendment would have been subsumed by the 1983 action or whatever, even though they have a different name, but it's literally the federal equivalent of those claims. That's correct, Your Honor. They're encompassed by the federal action. And they were actually dealt with in summary judgment because the court found probable cause, obviously because of the warrant, but also on the resisting arrest charge. Mr. Kittredge, you're suggesting, as I understand it, that in addition to delay, futility is a ground for denying the motion to amend. I believe, yes, today it is, Your Honor. I'm not sure if the court would have been able to say that then because she hadn't seen summary judgment yet. But I believe that was definitely the case. Okay. Okay, well, thank you very much. You're all excused. Let's call the next case. Thank you. Thank you, counsel. And so that concludes argument in this case.